UNITED STATES of America, Appellee,

v.

Alejandro DIAZ–BASTARDO,
Defendant, Appellant.

No. 90–1800.

United States Court of Appeals,
First Circuit.

Heard March 5, 1991.

Decided March 29, 1991.

Raymond Rivera Esteves, San Juan, P.R., for defendant, appellant.

Ernesto Hernandez–Milan, Asst. U.S. Atty., Guaynabo, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOYLE,[*] District Judge.

SELYA, Circuit Judge.

The sole issue in this appeal concerns the propriety of the district court's upward departure from the federal sentencing guidelines. For the reasons that follow, we vacate the sentence and remand for further proceedings.

I

Our task requires us to revisit the odyssey of an anonymous 34–foot yawl which, in April 1990, transported a boatload of illegal aliens from the Dominican Republic to Puerto Rico. The circumstances of the ill-starred voyage were chronicled in *United States v. Trinidad de la Rosa*, 916 F.2d 27 (1st Cir.1990), and we refer the reader who thirsts for more detail to Judge Bownes' narrative account. *See, e.g., id.* at 28. For our purposes, it suffices to say that Bartolo Trinidad de la Rosa (Trinidad), Marcial Hernandez Mejias (Hernandez), and the present appellant, Alejandro Diaz Bastardo (Diaz), were partners in the crime, although "[t]he prosecution rated Diaz as the most culpable." *Id.* at 29.[1]

Unlike Trinidad, who opted to enter a guilty plea, *see id.* at 27–28, Diaz stood

---

[*] The Honorable Francis J. Boyle, of the District of Rhode Island, sitting by designation.

1. Diaz allegedly owned the yawl, made the arrangements for the voyage, received payments from the aliens, hired Trinidad and Hernandez, and commanded the vessel en route to Puerto Rico. *See United States v. Trinidad de la Rosa*, 916 F.2d at 28–29.

trial. A jury found him guilty of each and every count of a five count indictment charging that he had violated 8 U.S.C. § 1324(a)(1)(A).[2] The district court commissioned a presentence report, held a sentencing hearing, and fixed the guideline sentencing range (GSR) at 18 to 24 months. *See generally* U.S.S.G. § 1B1.1 (rev. ed. 1989); *United States v. Diaz–Villafane,* 874 F.2d 43, 47–48 (1st Cir.) (explaining methodology for calculating sentencing range under federal sentencing guidelines), *cert. denied,* — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Believing that even the top end of the GSR was incommensurate with the flagitiousness of Diaz's offense behavior, the court departed upward and imposed a prison term of 60 months. To be specific, the court premised the departure on its view that Diaz "in a dangerous manner *and* in an inhuman manner endangered the life [sic] of 54 individuals by transporting them on a 34 foot yawl." [Emphasis supplied.]

## II

We need not linger long in our review of the upward departure. The framework for analysis is set forth in *Diaz–Villafane,* 874 F.2d at 49, and requires that we consider, *de novo,* the lower court's conclusion "that the case is sufficiently 'unusual' to warrant departure." *Id.*

In this instance, much of our work has been done in advance. In sentencing Trinidad, the same district judge departed upward, making essentially the same findings concerning exactly the same voyage. *See United States v. Trinidad de la Rosa,* 916 F.2d at 30. There, as here, the district court asserted that both dangerous conditions and inhumane treatment justified the enhanced sentence. *Id.* We disagreed, ruling that there was no factual basis for the finding of inhumane treatment, *id.* at

30–31; and that, as to peril, Trinidad "was not responsible for the danger, nor did he contribute to it." *Id.* at 31. Accordingly, we remanded with instructions to eliminate the upward departure.

■ Insofar as inhumane treatment is concerned, the evidence which is of record here apparently replicates the evidence that was before the court when Trinidad was sentenced; at any rate, the government has limned no additional facts bearing on this point. If we are to enshrine fairness and predictability of results in the judicial process, then in a multi-panel circuit, newly constituted panels should normally consider themselves bound by prior panel decisions closely in point, at least in the absence of supervening authority. *See Kotler v. American Tobacco Co.,* 926 F.2d 1217, 1223 (1st Cir.1990). Moreover, especially in a criminal case, accepted principles of *stare decisis* militate strongly in favor of resolving identical points in the same way for identically situated defendants. *See United States v. Connor,* 926 F.2d 81, 82–83 (1st Cir.1991); *United States v. Reveron–Martinez,* 836 F.2d 684, 687 & n. 2 (1st Cir.1988). Hence, to the extent that the district court predicated the upward departure in Diaz's case on its perception that inhumane treatment had occurred, *United States v. Trinidad de la Rosa* teaches that the court erred.

## III

The second basis for the departure—the dangerousness of the venture—stands on a different footing. We ruled in the earlier case that a court could "take judicial notice that fifty-four people crowded into a 34–foot yawl creates a dangerous condition." *United States v. Trinidad de la Rosa,* 916 F.2d at 30. *See also United States v. Reyes,* 927 F.2d 48, 51–53 n. 2 (1st Cir. 1991). Thus, although the first pillar un-

---

**2.** The statute of conviction provides in pertinent part:

  (1) Any person who—

    (A) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry ..., regardless of whether such alien

has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien, ... shall be fined ... or imprisoned not more than five years, or both, for each alien....

8 U.S.C. § 1324(a)(1)(A).

dergirding the departure was illusory, the second pillar was solid. The government argues that, given the supportable finding of danger, we should sustain the sentence imposed.

Although present, dangerousness was not a cognizable basis for departure in Trinidad's case because he was not responsible for creating the danger. *United States v. Trinidad de la Rosa*, 916 F.2d at 31. The government plausibly claims that Diaz, as the proprietor of the venture and the admiral of the fleet, *see supra* note 1, can and should be held accountable, unlike Trinidad. We agree that the evidence of responsibility is more substantial here than in the previous case. Furthermore, the relevant policy statement is cast in the disjunctive. It suggests that the presence of either "dangerous *or* inhumane treatment" may warrant an upward departure. *See* U.S.S.G. § 2.L1.1, comment. (n. 8) (emphasis supplied); *see also United States v. Reyes, supra*, 927 F.2d at 51–52; *United States v. Trinidad de la Rosa*, 916 F.2d at 30. In effect, then, the government's argument causes us to confront, face up and squarely, the question of how to treat a departure when the sentencing court rested it on multiple grounds, some appropriate to that end and some not.

There is no consensus among our sister circuits regarding this question. *Compare, e.g., United States v. Franklin*, 902 F.2d 501, 508 (7th Cir.) ("[W]hen a court relies on both proper and improper factors to justify an upward departure, the sentence can be upheld if, standing alone, the proper factors justify the magnitude of the departure"), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990) and *United States v. Rodriguez*, 882 F.2d 1059, 1068 (6th Cir.1989) (similar), *cert. denied,* —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990) *with United States v. Hernandez–Vasquez*, 884 F.2d 1314, 1315–16 (9th Cir.1989) (per curiam) ("If a court relies on both proper and improper factors, the sentence must be vacated and the case remanded.") and *United States v. Zamarri-*

*pa*, 905 F.2d 337, 342 (10th Cir.1990) (similar). *See also United States v. Hummer*, 916 F.2d 186, 195 n. 8 (4th Cir.1990) (listing cases and discussing circuit split).

■ Keeping in mind the delicate balance between ensuring a defendant fair process, on the one hand, and conserving judicial resources, on the second hand, we prefer a balanced approach, aligning us, generally, with the Seventh and Sixth Circuits. We rule, therefore, that a departure which rests on a combination of valid and invalid grounds may be affirmed so long as (1) the direction and degree of the departure are reasonable in relation to the remaining (valid) ground, (2) excision of the improper ground does not obscure or defeat the expressed reasoning of the district court, and (3) the reviewing court is left, on the record as a whole, with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed. Thus, if the reasons for a departure provided by a district court appear irretrievably intertwined, or if the inappropriate ground appears to have been the centerpiece of the lower court's thinking, or if the remaining ground cannot alone support the extent of the departure, then the sentence should be vacated and the case remanded for resentencing.[3]

This is a case where the grounds underlying the departure were linked together. The court's comments at sentencing were focused equally, if not more intensely, on the treatment of the aliens. No specific findings were made as to the extent that Diaz contributed to the perceived dangerousness of the conditions obtaining during the voyage. On this scumbled record, we do not believe that we should attempt to review the propriety and extent of a one-legged departure. Rather, we think it best to allow the sentencing judge, in the first instance, to determine whether a departure might lie, and should be essayed, on the

---

**3.** In *United States v. Brown*, 899 F.2d 94, 98–99 (1st Cir.1990), and again in *United States v. Reyes, supra*, 927 F.2d at 51, we followed a

practice consistent with the rule that we announce today, albeit without extended discussion. Today, we make our position explicit.

ground of danger, and if so, the degree thereof.

### IV

We need go no further. For the reasons stated, we affirm the judgment of conviction, but vacate the defendant's sentence and return the case to the district court for resentencing in the albedo of *United States v. Trinidad de la Rosa,* 916 F.2d 27, as supplemented by this opinion and by our opinion in *United States v. Reyes, supra.* We see no reason why the district judge thus far presiding, who has acquired an encyclopedic knowledge of the case, should not preside at resentencing.

*The judgment of conviction is affirmed, the defendant's sentence is vacated, and the case is remitted to the district court for further proceedings consistent herewith.*