**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Duke Gary BUTLER, Defendant–Appellant.**

No. 00–10578.

D.C. No. CR–00–00054–RGS.

United States Court of Appeals, Ninth Circuit.

---

Submitted Aug. 9, 2001 *.

Decided Oct. 10, 2001.

* The panel unanimously finds this case suitable for decision without oral argument.  *See* Fed. R.App. P. 34(a)(2).

Before CHOY, SKOPIL, and FARRIS, Circuit Judges.

### MEMORANDUM **

Duke Gary Butler appeals his conviction and sentence following a jury trial for assault with a dangerous weapon and use of a firearm during a crime of violence. *See* 18 U.S.C. §§ 113(a)(3), 1153 & 924(c). He claims that the district court erred by finding that the victim's injuries were permanent or life-threatening and by departing upward on the ground that Butler's criminal history had been under-represented. We vacate his sentence and remand for resentencing to allow the district court to provide a more detailed explanation of its reasons for departing upward based on criminal history.

### I. Permanent or Life–Threatening Injury

■ Butler claims that the district court erred in finding that the victim had suffered permanent or life-threatening injury. This finding resulted in an increase of six levels, whereas a finding of serious bodily injury would have elevated the sentence only four levels. U.S.S.G. § 2A2.2(b)(3)(C). The guidelines define "permanent or life-threatening bodily injury" as "injury involving a substantial risk

of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1, commentary 1(h).

Dr. Sibley, the general surgeon who treated the victim, Bordeaux, testified at trial regarding the extent of Bordeaux's injuries. When Bordeaux arrived at the hospital, he was categorized as a "level-one trauma," the level for patients with "any possibly life-threatening injury." He initially suffered from low blood pressure and fluid loss from ongoing bleeding. Dr. Sibley operated immediately to remove a pellet lodged in his colon and repair damage to that organ. She was concerned because "a bowel injury can kill you and needs to be obviously addressed" due to the fact that "the colon has the highest bacterial content of any of the bowel and is a problem in terms of infectious complications if it's missed." Bordeaux suffered from other wounds scattered throughout his body. Some of the BB pellets came close to seriously harming his liver, kidney, and lungs, but examination revealed no significant damage to those organs. Dr. Sibley removed three pellets, but left others inside Bordeaux's body.

Dr. Sibley's testimony supports the district court's conclusion that Bordeaux suffered life-threatening or permanent injury. The low blood pressure, loss of blood, and internal harm threatened his life, as reflected by the hospital's decision to categorize him as a level one trauma patient. *Cf. United States v. Hinton,* 31 F.3d 817, 826 (9th Cir.1994). Dr. Sibley testified that the specific injury to his colon may have resulted in death without immediate and proper treatment.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

■ Butler argues that there was only a possibility that Bordeaux's injuries were life-threatening, but after a full diagnosis, the injuries were deemed only serious. This argument is unpersuasive. The blood loss and damage to the colon threatened Bordeaux's life despite the fact that the threat was averted by skillful treatment. In addition, a victim's injury can be life-threatening if he or she is placed in a life-threatening situation, even if he or she does not suffer from life-threatening injuries. *United States v. Morgan*, 238 F.3d 1180, 1188 (9th Cir.2001). Bordeaux was left alone next to a canal after being shot and hit in the head. He was bleeding profusely and had to drag himself onto the street to signal for help. This situation threatened his life, even if his injuries were later repaired. Therefore, the district court's finding that Bordeaux's injuries were life-threatening or permanent was not clearly erroneous. *See id.* at 1187.

## II. Upward Departure Based on Criminal History

■ Butler next argues that the district court erred in departing upward one criminal history level. He argues that the district court provided inadequate justification at sentencing for its decision and that the guidelines sufficiently accounted for his prior criminal history.

■ A court may depart upward from the guidelines if the criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." Sentencing Guideline § 4A1.3. Such a departure is only appropriate in the exceptional case because a defendant's criminal history is already expressly taken into account by the sentencing guidelines. *United States v. Carrillo–Alvarez*, 3 F.3d 316, 320 (9th Cir.1993).

A sentencing court must clearly explain its decision for imposing an upward departure. *United States v. Ponce*, 51 F.3d 820, 833 (9th Cir.1995); *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989). Such a clear statement of reasons is required by statute. 18 U.S.C. § 3553(c); *Wells*, 878 F.2d at 1233. This requirement also furthers the Sentencing Reform Act's purpose of doing away with uncertainties and disparities in sentencing. *Wells*, 878 F.2d at 1233.

The district court that sentenced Butler did not provide a sufficient explanation for its upward departure. Its explanation consisted of one sentence:

> The Court, however, does depart upward pursuant to Sentencing Guideline 4(a)(1.3) because a review of the defendant's criminal history other than the offenses set forth in paragraph 34 of the pre-sentence report significantly under represents his criminal history calculation as determined by the Court, and so the Court does depart upward one criminal history level.

The district court did not point to any particular facts that made Butler's record more serious than that of others in the same criminal category. *United States v. Carrillo–Alvarez*, 3 F.3d 316, 324 (9th Cir. 1993). Moreover, its statement that Butler's criminal history was under-represented in his sentence was the type of conclusory statement disallowed in *Carrillo–Alvarez. Id.*

■ The government argues that the facts contained in the pre-sentence report justify an upward departure. However, it is not enough that there are legitimate grounds available in the record; rather the district court must have based its departure on those legitimate grounds. *United States v. Connelly*, 156 F.3d 978, 983 (9th

Cir.1998); *United States v. Singleton*, 917 F.2d 411, 412 (9th Cir.1990).

The government also argues that the court's reliance on the presentence report ("PSR") provided sufficient facts for its decision. It quotes the court's statement that it "has reviewed the pre-sentence report" along with other material "[a]nd based upon all of those material, the Court is now prepared to impose sentence." Although it is true that the district court "may build the appropriate factual record by adopting a presentence report that has made specific findings of fact that support the decision," *Singleton*, 917 F.2d at 412–413, the district court's mere recitation that it reviewed all of the documents, including the PSR, is insufficient to meet its requirement of explanation. *See Ponce*, 51 F.3d at 833. Butler's PSR did not include any conclusions about whether the court should depart from the sentencing range or why. The report merely summarized Butler's prior criminal activity and stated, "An upward departure may be considered for under representation of criminal history." *Cf. Singleton*, 917 F.2d at 412–413.

Because the district court did not provide a specific enough explanation to fulfill the statute's requirements and allow appellate review, we vacate Butler's sentence and remand for the district court to set for the specific reasons for its departure from the sentencing guidelines. *Ponce*, 51 F.3d at 833; *Wells*, 878 F.2d at 1233.

Sentence VACATED and case REMANDED for resentencing.